UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURAB MODREKILADZE,<br><br>                             Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE; DANIEL BRIGHTMAN; TODD LYONS; PAMELA BONDI; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>                             Respondents. | Case No.: 26-cv-271-JES-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Zurab Modrekiladze's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 4, 5. For the reasons set forth below, the Court **GRANTS** the petition.

## I.    BACKGROUND

Petitioner, a native of Georgia, entered the United States on October 20, 2023 in order to seek asylum. ECF No. 1 ¶ 2. He claimed credible fear, and was found to have a positive credible fear determination. *Id.* He was issued a Notice to Appear and put into removal proceedings. *Id.* ¶ 40. On May 17, 2024, he was ordered to be released on parole

under the Alternatives to Detention ("ATD) program. ECF No. 1-2 at 2. Since his release, Petitioner alleges that he had attended all his scheduled hearings and conformed with all the requirements of his parole. ECF No. 1 ¶¶ 41-42. After his release, Petitioner obtained work authorization and established a life in the United States. *Id.* ¶ 3. He filed an asylum application on June 4, 2024. *Id.*

On October 27, 2025, while Petitioner was making a delivery to the Camp Pendleton Marine Base, he was held at the entry gate. *Id.* ¶ 45. After being held for three hours, officers from Immigration and Customs Enforcement ("ICE") arrived and re-detained Petitioner. *Id.* ¶ 46. Petitioner asserts that he was never given written notice that his parole was being terminated nor was he given any particularized reasons for why he was being detained. *Id.* He is currently being held at the Otay Mesa Detention Center. *Id.*

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

In his petition, Petitioner argues that his re-detention and the manner under which it was carried out violates the Administrative Procedure Act ("APA"), procedural due process, and the Fourth Amendment. ECF No. 1 ¶¶ 52-72. In their return, Respondents did

not directly address these arguments and instead only states that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). ECF No. 4. As such, Respondents state that Petitioner is only entitled to a bond hearing. *Id.* Petitioner then filed a traverse, arguing that a bond hearing is not the appropriate remedy because his re-detention itself is illegal and he should be released. ECF No. 5.

### A.   Bond Hearing

As a threshold issue, the Court will first address the parties' disagreement regarding whether a bond hearing is an appropriate remedy. The Court agrees with Petitioner that it is not. Indeed, in several cases within this district where the petitioner raised a due process violation regarding re-detention after having been released on parole, the courts have rejected the same argument made by Respondents that the petitioner is only entitled to a bond hearing as a member of the *Maldonado Bautista* class. *See Naveen v. LaRose*, No. 25-CV-3689 JLS (AHG), 2025 WL 3771900, at *2 (S.D. Cal. Dec. 30, 2025) (rejecting Respondents' argument that petitioner is a class member under *Maldonado Bautista* and therefore only entitled to a bond hearing, rendering his other constitutional arguments moot); *Lozada v. Larose et al.*, No. 25CV3614-LL-KSC, 2026 WL 184205, at *2 (S.D. Cal. Jan. 23, 2026) (rejecting same argument and releasing petitioner on due process violation); *Garcia v. Noem et al.*, No. 25CV3759-LL-BLM, 2026 WL 194745 (S.D. Cal. Jan. 26, 2026) (same); *Xie v. LaRose*, No. 3:25-CV-03649-RBM-MSB, 2026 WL 92066, at *2 (S.D. Cal. Jan. 13, 2026) (same). Thus, despite Respondents' concession regarding a bond hearing,[1] the Court finds it appropriate to address the constitutional violations raised in the petition.

---

[1] The Court notes that while Respondents state that Petitioner is part of the Bond Eligible class in *Maldonado Bautista*, at least one court has disagreed. *See Xie*, 2026 WL 92066, at *1–2 (finding that petitioner who had previously been apprehended upon arrival and released on conditional parole was not part of the class). Regardless, however, the Court does agree with Respondents that Petitioner's re-

## B. Due Process

Petitioner argues that his re-detention violates procedural due process because he was not given any notice and an opportunity to be heard when he was re-detained in October 2025. As stated above, the government does not meaningfully address the procedural due process issue in its return. *See generally* ECF No. 4.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.*

---

detention is governed by 8 U.S.C. § 1226 rather than § 1225, irrespective of and independently from *Maldonado Bautista*. The Court has previously held that where a petitioner is apprehended at the border, paroled into the country, and had been residing in the country when he was re-detained, his detention is governed by § 1226. *See, e.g.*, *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *4-5 (S.D. Cal. Oct. 30, 2025) (explaining reasoning and citing cases); *Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same); *Garcia*, 2026 WL 194745, at *2 (same).

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi*, 792 F. Supp. 3d at 1034-35.

In this case, Petitioner's release form states that he was released from ICE custody on "Parole with ATD." ECF No. 1-2 at 2. ATD stands for "Alternatives to Detention" and

is a program that was "designed 'to provide supervised release and enhanced monitoring for a subset of foreign nationals subject to removal whom ICE has released into the United States.'" *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *6 (E.D. Cal. Aug. 28, 2025) (citation omitted). "These aliens are not statutorily mandated to be in DHS custody, are not considered threats to public safety or national security, and have been released either on bond, their own recognizance, or parole pending a decision on whether they should be removed from the United States." *Id.* (citation omitted).

Courts have consistently held that noncitizens who have been granted some form of parole with ATD have a protected interest in their liberty, cognizable under due process. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (finding that petitioner who was released subject to ATD conditions "undoubtedly" has an "established interest in his liberty"); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025) ("When an immigrant is placed into parole status after having been detained, a protected liberty interest may arise."); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *14 (E.D. Cal. Oct. 16, 2025) (similarly finding liberty interest). Courts have found such liberty interest even where violations of the ATD conditions have occurred, so such liberty interests are at "full force" where, as here, no violations of the conditions have been alleged against Petitioner. *See Herna v. Chestnut et al.*, No. 1:25-CV-01919-JLT-SAB (HC), 2026 WL 177801, at *4 n.2 (E.D. Cal. Jan. 22, 2026).

Thus, the Court agrees with all the foregoing courts and similarly holds that Petitioner has procedural due process rights arising from his existing parole.[2] Petitioner has

---

[2] The form substantiating Petitioner's parole does not state which statutory provision governs his parole. Parole with ATD appears to be possible under either humanitarian parole or conditional parole. *See Martinez Hernandez*, 2025 WL 2495767, at *2 (petitioner granted parole with ATD under conditional parole under 8 U.S.C. § 1226); *J.S.H.M*, 2025 WL 2938808, at *1 (petitioner granted parole with ATD under humanitarian parole pursuant to 8 U.S.C. 1182(d)(5)). Under either provision, however, as the Court has noted above, a petitioner has due process rights that stem from the granted parole.

stated that he received no notice when he was re-detained and given no opportunity to be heard. ECF No. 1 ¶¶ 46-47. In their briefing, Respondents do not contradict this, providing no evidence that Petitioner received any notice or opportunity to be heard. *See generally* ECF No. 4. Petitioner claims that he complied with the conditions of his release, which Respondents do not dispute. ECF No. 1. ¶ 42. Accordingly, the Court joins these courts and finds that Respondents violated Petitioner's due process rights when they re-detained him on October 27, 2025.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **February 3, 2026**, confirming that Petitioner has been released.

Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 29, 2026

Honorable James E. Simmons Jr.
United States District Judge